*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BUTLER, Minors.

UNPUBLISHED
March 13, 2025
11:59 AM

No. 367013
Wayne Circuit Court
Family Division
LC No. 2019-001563-NA

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to her three minor children, MMB, AJB, and MB, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child returned to parent). We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Respondent became addicted to oxycontin in 2015 after being prescribed the drug because of a work-related injury. The children were removed from their father[1] and respondent's custody in August 2019, shortly after the youngest child, MB, tested positive for morphine at birth. She suffered withdrawal and was hospitalized for two weeks.[2] Respondent tested positive for cocaine, heroin, fentanyl, norfentanyl, morphine, and oxycontin shortly after giving birth to MB, and admitted she used drugs during her pregnancy and did not seek prenatal care because of her drug

---

[1] The parental rights of the children's father were also terminated, but he is not a party to this appeal.

[2] AJB tested positive at birth for hydromorphone, methadone, and oxycodone in 2015 and a Children's Protective Services (CPS) referral was made. The trial court did not have hospital records regarding MMB's birth.

use.[3] When MB was born, respondent was living with her grandmother in a senior citizen home and spent time with the children when they came to visit her at the home. The children and their father were living with the children's paternal grandmother (LT). After the children were removed from their parents' care because of drug use and abuse of MB (being born testing positive for morphine), they remained with LT.

Respondent's treatment plan required her to complete individual therapy, infant mental health therapy, substance-abuse therapy, inpatient substance-abuse treatment, weekly random drug screens, obtain a legal source of income, maintain suitable housing, complete a psychological evaluation, maintain regular contact with the Department of Health and Human Services (DHHS), and attend supervised parenting time. Respondent visited her children almost every day. While attending supervised parenting time at LT's home, she took on every parenting role, including getting the children up and ready for school, making their meals, bathing them, and playing with them. When financially able, respondent provided the children with clothing and gifts for birthdays and holidays, but the support was not consistent or reliable. Respondent was closely bonded to the children and excelled in this component of her treatment plan. However, this was the only component of her treatment plan that she ever substantially fulfilled.

Although respondent reported attending inpatient substance-abuse treatment on two separate occasions, she never provided DHHS with the required verification that she attended. Respondent's DHHS caseworker, Heather Huber, testified that respondent admitted failing to complete inpatient treatment and that one facility confirmed that she never attended. Respondent inconsistently completed weekly random drug screens to prove her sobriety; the few she did submit were positive for illegal drugs. In total, respondent missed 170 out of 184 drug screens between the time the children were removed from her care and the time that her parental rights were terminated. The 14 drug screens that she completed were positive for cocaine and fentanyl. Although she attended outpatient individual and substance-abuse therapy off and on, she never completed a program. She started her psychological evaluation, but never finished. Respondent also reported that she was employed, but failed to provide DHHS with information to verify her employment. Respondent and the father did not have their own housing, but if reunification was granted, both planned to move into LT's home with the children.

In December 2021, after two years of making little progress with substance abuse, DHHS filed an initial supplemental petition to terminate respondent's parental rights. Following an evidentiary hearing held in February and March 2022, the trial court found that statutory grounds to terminate respondent's parental rights existed. Regarding the children's best interests, the court stated:

> [A]nd with the children being placed with [LT], I think even if the Court does terminate, [the parents] still will see their children and they seem to have a bond with their children and it puts the children in no worse position but it does put them

---

[3] Shortly before MB was removed from her father's care, he tested positive for heroin, fentanyl, and norfentanyl, and admitted he knew respondent was abusing drugs during her pregnancy.

in a better position of having some idea of permanency as opposed to always wondering if and when and to what extent mom and dad will start pitching in.

However, the court held that termination was not in the children's best interests given the strong bond respondent maintained with them and because she was visiting them consistently. The court denied the petition, and gave respondent another chance to comply with her service plan with the continued goal of reunification. The trial court warned respondent that this was her last chance— if DHHS filed a second termination petition, the trial court would grant it because MB had been in care since birth and little progress had been made with respondent's substance abuse. The trial court ordered respondent to continue all services.

At a September 2022 dispositional review and permanency planning hearing, Huber recommended the trial court add guardianship as a concurrent goal with reunification because respondent continued to suffer from substance abuse but still visited the children every day and maintained a strong bond. Huber testified termination would be detrimental to the children because of their strong attachment. Although Huber and LT never noticed respondent under the influence of drugs during her supervised visitation, the trial court noted that respondent had become complacent with LT being the children's primary caretaker and was concerned about safety issues because respondent was around the children daily while still testing positive for cocaine and fentanyl. Respondent and LT were agreeable to a guardianship if approved by the court, and LT indicated that she would start the process to become a subsidized guardian.

Between March 2022 and March 2023, respondent was ordered to continue all services, including individual therapy, infant mental health therapy, substance-abuse therapy, inpatient substance-abuse treatment, weekly random drug screens, obtaining a legal source of income, maintaining suitable housing, completing a psychological evaluation, maintaining regular contact with DHHS, and attending supervised visitation. During this time, the only services respondent participated in were individual therapy, substance-abuse therapy on an inconsistent basis, and supervised visitation on a consistent basis. She tested positive for cocaine, fentanyl, and heroin, or a combination thereof, 11 times between March 2022 and March 2023, and stopped drug screening thereafter. Respondent worked different jobs off and on, and although she provided some financial assistance to LT to help with the children's basic needs, respondent had never been financially responsible for the children while they were in care.

DHHS filed a second supplemental petition to terminate respondent's parental rights in April 2023. At the June 2023 evidentiary hearing, Huber testified she did not believe respondent would resolve her substance-abuse issues in the near future. Respondent still had not completed a psychological evaluation, and Huber reported respondent had not obtained suitable housing or a legal source of income. However, respondent testified that since February 2023, she had been living in Detroit in a three-bedroom house with working utilities that was left to her by her grandmother, that she had necessary furniture and appliances, and was paying the utility bills. According to respondent, Huber had visited the house four times for random drug screens, but respondent never asked Huber to assess the home due to "a lot of things going on that wasn't [sic] with the kids so our communication level had went [sic] completely down." Respondent maintained that she reached out to Huber via text three times, and even sent over MMB's report card, but Huber did not respond. Respondent was unaware that her case had been switched to a

new case worker. Respondent testified that for five months she had been working full time making $18 an hour as a driver for Trinity Medical Center and that she provided Huber with a pay stub. Huber testified that the pay stub was not dated, and she did not have time to verify it because respondent gave it to her the day before the evidentiary hearing.

During her testimony, respondent begged the court for one more chance at reunification because the children were all she had, she needed them, and could not go without seeing them. Respondent testified that MB needed her because MB was so shy and afraid of everyone and that all three children needed respondent and their father. Respondent believed that she would lose contact with the children if her parental rights were terminated. Huber testified that respondent's substance abuse was the main issue preventing reunification, that respondent could not provide the children with permanence or a stable home, and that respondent was no closer to reunification in June 2023 than when the children were removed from her care in August 2019. At the end of the hearing, the trial court found that statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in the children's best interests. The trial court opined that a guardianship was not appropriate because the children's need for stability and permanence prevailed over their parents' drug abuse. Respondent now appeals.

## II. REASONABLE EFFORTS

Respondent first argues that DHHS did not make reasonable efforts toward reunification because it failed to provide her with appropriate services to rectify the conditions that led to removal. We disagree.

## A. ISSUE PRESERVATION AND STANDARD OF REVIEW

To preserve for appellate review an argument challenging whether reasonable efforts toward reunification were made, the respondent must object to services at the time they were offered. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2.[4] Throughout the lengthy history of the lower court proceedings, respondent either failed to object to the services offered by DHHS under her case service plan or objected on different grounds than she now asserts on appeal. Although she refuted some of the drug testing throughout the proceedings, objecting to the validity of the tests performed by Huber or reporting that she was being improperly charged for drug testing, those issues were resolved by rereferrals to different providers, and respondent does not specifically challenge the drug-testing protocols related to reasonable efforts in her brief on appeal. Additionally, respondent cites the Americans with Disabilities Act (ADA), 42 USC 12132, in her brief on appeal, and seemingly argues that DHHS failed to provide her with reasonable accommodations. The ADA was never raised in the trial

---

[4] "The Michigan Supreme Court has expressed skepticism about this rule but declined to overturn it. See *In re Hicks/Brown*, 500 Mich 79, 88-89; 893 NW2d 637 (2017)." *In re MJC*, ___ Mich App at ___ n 2; slip op at 2 n 2.

court, nor was it asserted that respondent is an individual with a qualified disability. Thus, this issue, in all respects, is unpreserved. *Id*. at ___; slip op at 2.

Unpreserved issues in termination cases are reviewed for plain error affecting substantial rights. *Id*. at ___; slip op at 2.[5] "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at ___; slip op at 2 (quotation marks and citations omitted). An error affects substantial rights if it causes prejudice, meaning, it affects the outcome of the proceedings. *Id*. at ___; slip op at 2. The party who asserts plain error has the burden of proving prejudice. *Id*. at ___; slip op at 2.

## B. DHHS MADE REASONABLE EFFORTS TOWARD REUNIFICATION

Generally, "when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), and (4); see also MCL 712A.19a(2). This duty of DHHS to make reasonable efforts to provide services to achieve reunification is commensurate with the responsibility of the respondent to participate in the offered services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "Title II of the ADA requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017), quoting 42 USC 12132. The ADA definition of "individual with a disability" is "a person who has a disability. The term individual with a disability does not include an individual who is currently engaging in the illegal use of drugs, when the public entity acts on the basis of such use." 28 CFR 35.104; see also 42 USC 12210(a). Individuals participating in a supervised rehabilitation or drug-treatment program are protected by the ADA as long as they are not currently using illegal drugs. See 42 USC 12210(b)(2); 28 CFR 35.131(a)(2)(*ii*).

As stated above, DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights, *In re Fried*, 266 Mich App at 542, and as a part of those reasonable efforts, DHHS must "modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *In re Hicks/Brown*, 500 Mich at 86. However, DHHS cannot accommodate a disability of which it is unaware; thus, a respondent must inform DHHS of his or her disability and the need for accommodations. *Id*. at 87. Moreover, when challenging the services offered by DHHS, the respondent must establish that he or she

---

[5] "This Court recently clarified that the plain-error rule does not apply to claims of error raised in civil cases. . . . However, this Court specifically excepted termination of parental rights cases from its holding because they 'present different constitutional considerations.' " *In re MJC*, ___ Mich App at ___ n 3; slip op at 2 n 3, citing *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 293-294 & n3; 14 NW3d 472 (2023).

would have fared better if other services were offered. *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

In her brief on appeal, respondent does not specify her diagnosis, if any, and she failed to comply with the DHHS requirement to obtain a psychological evaluation. Although the record shows that respondent struggles with substance abuse, she does not assert that she has opioid-use disorder or provide proof that she was diagnosed with opioid-use disorder or other mental health issues. Respondent does not argue that the services that were provided were somehow deficient or unreasonable. She objected to some and participated in others. *Sanborn*, 337 Mich App at 265. She merely asserts that she needed "extra help" to complete them. Respondent initially wanted and participated in outpatient substance-abuse treatment. However, inpatient substance-abuse treatment was recommended throughout the proceedings given the severity of her substance-abuse problem, and it would have helped respondent to make the most progress toward reunification. Respondent did not make the commensurate reasonable effort to participate in inpatient substance-abuse therapy. *In re Frey*, 297 Mich App at 248.

Further, DHHS made reasonable efforts to address respondent's drug addiction through the years of these proceedings. Respondent was referred to inpatient treatment programs several times over several years. Respondent reported entering two programs, and completing them, but she provided no verification of having done so. To prove that she was making progress on her drug addiction, she was required to complete weekly random drug screens beginning in 2019. Respondent did not consistently complete the 184 drug screens offered throughout this case, and of the 14 drug screens that she completed, she often tested positive for a combination of cocaine, heroin, and fentanyl. Her last drug screen that she completed in March 2023 was positive for all three substances. Based on DHHS's multiple efforts to refer respondent to inpatient treatment and provide her with drug testing, we conclude that reasonable efforts were made to reunify respondent with her children. MCL 712A.19a(2) ("Reasonable efforts to reunify the child and family must be made in all cases" unless certain statutory exceptions apply). Ultimately, respondent failed in her commensurate responsibility to participate in services, *In re Frey*, 297 Mich App at 248, and she cannot now meet her burden of proving plain error with respect to DHHS's alleged failure to provide appropriate services.

## III. STATUTORY GROUNDS

Respondent also argues that the evidence was insufficient to establish that statutory grounds existed to terminate her parental rights because she was working toward compliance with her case service plan and making progress. We hold the trial court did not clearly err in determining statutory grounds existed.

## A. STANDARD OF REVIEW

This Court reviews for clear error a trial court's determination that statutory grounds for termination exist. *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 3. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at ___; slip op at 3 (quotation marks and citation omitted). To terminate parental rights, the trial court must find that at least one statutory ground

for termination under MCL 712A.19b(3) exists by clear and convincing evidence. *Id.* at ___; slip op at 3. Evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). This standard "is the most demanding standard applied in civil cases." *Id.* (quotation marks and citation omitted).

## B. ANALYSIS

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's parental rights if

> [t]he parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

"This statutory ground exists when the conditions that brought the children into foster care continue to exist and are not likely to be rectified despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks and citation omitted). Even if conditions improved, the court "may look to the totality of the evidence to determine whether a parent accomplished meaningful change in the conditions that led to adjudication." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022). In this case, the order of disposition was entered on September 5, 2019, and the order terminating respondent's parental rights was entered on July 3, 2023. More than 182 days had passed—the children had been in care for nearly four years.

One of the conditions that led to adjudication was respondent's drug use. MB tested positive for morphine at birth, and respondent admitted to drug use during her pregnancy. As part of her treatment plan, respondent was required to complete substance-abuse therapy, attend inpatient treatment, and complete weekly drug screens. However, by the time of the termination hearing, she had only recently reengaged in substance-abuse therapy, and the record contains conflicting evidence regarding her participation in and completion of in inpatient treatment. Although respondent reported entering inpatient treatment twice, she never provided DHHS with the required verification that she attended. Respondent asserted that she attended five days of inpatient therapy once, was not terminated early, and provided documentation to Huber. However, Huber testified that respondent admitted not completing inpatient treatment and that one facility confirmed that she never attended.

Regardless, the last drug screen respondent completed in March 2023 was positive for fentanyl and cocaine. Thus, respondent's substance-abuse issues that led to adjudication in 2019 continued to exist in 2023. Although respondent denied that she had any positive drug tests, she was still testing positive for the same substances at her last drug screen in March 2023. Huber did

not believe there were any more services DHHS could offer that had not been previously offered that would assist respondent or change the posture of this case. *In re Jackisch*, 340 Mich App at 334. Huber also did not think respondent could come into compliance regarding her substance-abuse issues any time soon, having already had four years to make changes. Further, although there were no reported issues with parenting, respondent never progressed to having unsupervised parenting time because of her ongoing substance abuse. Completing a psychological evaluation may have supported a good prognosis for becoming an independent parent and achieving unsupervised parenting time if respondent could tackle her substance-abuse problems, but respondent failed to complete the evaluation despite five referrals.[6]

There was no reasonable likelihood that respondent would rectify her substance-abuse problems within a reasonable amount of time. Therefore, the trial court did not clearly err in finding that a statutory ground existed to terminate respondent's parental rights under MCL 712A.19b(c)(*i*) because clear and convincing evidence established that respondent's drug problem persisted.[7]

## IV. TERMINATION IS IN THE CHILDREN'S BEST INTERESTS

Respondent argues that termination of her parental rights was not in the children's best interests because of the strong bond that she had with the children and that she should have been given more time to comply with her treatment plan. We disagree.

This Court reviews for clear error the trial court's determination that termination of parental rights is in a child's best interests. *In re Simpson*, ___ Mich App at ___; slip op at 3. The best-interests determination must be supported by a preponderance of the evidence. *Id*. at ___; slip op at 3.

After a statutory ground for termination is proven, the trial court must also find that termination is in the child's best interests before terminating parental rights. *Id*. at ___; slip op at 5. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court must focus on the child rather than the parent when determining best interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). The court may consider many factors in its decision, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over

---

[6] See *In re Jackisch*, 340 Mich App at 336 (This Court held the trial court did not err in terminating parental rights under MCL 712a.19b(c)(*i*) where the respondent, having participated in services for more than three years, never progressed to unsupervised parenting time because of substance-abuse problems. The trial court determined the respondent would not be able to provide proper supervision to the children within a reasonable time given the children's ages.).

[7] Because the court was required to find that only one statutory ground existed to terminate parental rights, *In re Simpson*, ___ Mich App at ___; slip op at 3, we need not address the remaining statutory grounds found by the trial court.

the parent's home. *In re Simpson*, ___ Mich App at ___; slip op at 5. The court may also consider "the likelihood that the child could be returned to the parent's home within the foreseeable future, if at all." *Id*. at ___; slip op at 5 (quotation marks, citation, and brackets omitted). "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019). The trial court should consider and weigh all the available evidence to make this determination. *In re Simpson*, ___ Mich App at ___; slip op at 5.

When making its best-interests determination, the trial court stated that it considered the record as a whole, and noted that the individual needs of the children did not significantly differ so as to require separate best-interests analyses. The court also stated that it considered the following factors: the children's relative placement, respondent's compliance with her service plan, her visitation history, the children's wellbeing in care, the bond between respondent and the children, respondent's parenting abilities, the children's need for permanence, stability, and finality, and the advantages of a foster home over respondent's home. The court specifically considered the alternative of a guardianship, but did not think it appropriate given the amount of time that respondent had been provided to comply with her service plan and her failure to do so. The court concluded that based on those factors, termination was in the children's best interests. The court specifically noted the children's need for stability and permanence and respondent's continued substance abuse.

Typically, a child's placement with relatives weighs against termination, but the court may still terminate parental rights despite a relative placement if termination is in the children's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). In this case, the children had been placed with their paternal grandmother for almost the entire time that they had been in care. The paternal grandmother was willing to enter into a guardianship, but was also willing to adopt the children. Although the trial court noted that a guardianship would leave hope that respondent could rectify the barriers to reunification, the court recognized that respondent had failed to address her drug use in the nearly four years that the proceeding had been pending. The children needed stability and permanence, which a guardianship could not provide. Unless respondent resolved her drug-abuse issues and regained custody, a guardianship would have merely continued the pattern of respondent visiting the children rather than parenting them on a daily basis.[8]

Although respondent denied using drugs after August 2022, she never consistently participated in weekly random drug screens to establish her sobriety. Rather, the last time that she completed a drug test in March 2023, she tested positive, and then she stopped screening altogether. Respondent's visitation never progressed from supervised to unsupervised because of the court's safety concerns involving respondent's drug use. While respondent visited the children every day, she was simultaneously testing positive for drugs. As such, respondent's substance

---

[8] The children's Legal Guardian Ad Litem (LGAL) agreed that it was in their best interests for respondent's parental rights to be terminated because they needed to know that they had a parent who would always provide for them and take care of them.

abuse was a major factor in the court's best-interests determination. *In re Rippy*, 330 Mich App at 361.

Additional factors also support the trial court's determination that termination was in the children's best interests. Respondent failed to provide verification of employment or stable housing for the children. While respondent testified that she had a permanent residence, she admitted that her housing had never been verified by her case worker. Likewise, while she testified that she was employed, she provided an undated check stub as verification of her employment. The trial court had other reasons to question respondent's credibility as well. For example, she testified that she had not used illegal substances since August 2022 despite the fact that every screen she took was positive for cocaine, fentanyl, and/or heroin. When asked why she did not attend drug screens that the case worker had scheduled, she responded that she did not receive the case worker's texts. Shortly before trial, the case worker scheduled testing to occur at a different facility, yet when confronted with the fact that she failed to appear, respondent stated that she did not receive the referral. In addition, respondent had been scheduled for a psychological evaluation to occur the day after the first day of trial, but she failed to attend. When confronted with that fact, respondent testified that the facility changed the date of the evaluation, yet the case worker testified that the evaluation did not occur because the facility was unable to reach respondent.

The children's need for permanence, stability, and finality was paramount to the trial court's decision. They had been in their paternal grandmother's care for four years—the entirety of the youngest child's life. They were bonded to her, she provided for all of their needs, and she was willing to adopt. She had provided stable housing for four years (except for a brief interlude when the children stayed with their aunt due to a broken furnace). She enrolled MMB and AB in a school system where they were both doing well overall, and MB met all developmental milestones. Although it is well known that children who were exposed to illicit substances in utero can face educational and developmental difficulties, the children here have thus far thrived in those areas while living with their paternal grandmother.

Accordingly, we find that a preponderance of the evidence supported the trial court's determination that termination of respondent's parental rights was in the children's best interests and that the determination was not clearly erroneous. It is in the children's best interests to have a sober parent who can provide unsupervised care. By failing to show that she could remain sober at any point during the four years that this matter was pending, respondent has not proven that she could be that parent, and there was no likelihood that the children could be returned to a safe, drug-free, stable home with respondent within the foreseeable future. See *In re Simpson*, ___ Mich App at ___; slip op at 5. Further, the trial court did not clearly err by rejecting the option of a guardianship on the basis that it would not have provided with the children with the stability and permanence to which they were entitled.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace